# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JANET DARMO, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 14-cv-4827 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| TARGET CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Janet Darmo's motion for reconsideration [67] and Defendant Target Corporation's bill of costs [70]. For the reasons set forth below, Plaintiff's motion for reconsideration [67] is granted in part with respect to Plaintiff's constructive notice theory, and Defendant's bill of costs [70] is denied without prejudice as premature. This case is set for further status on November 9, 2016 at 9:00 a.m. to set a schedule for pre-trial filings and to discuss the possibility of settlement.

**I.  Background**

The facts of this case are set out in the Court's Memorandum Opinion and Order [65] granting Defendant's motion for summary judgment [36]. See *Darmo v. Target Corp.*, 2016 WL 1161282, at *1–2 (N.D. Ill. Mar. 23, 2016).

To recap, Plaintiff slipped and fell on a water puddle in one of Defendant's retail stores in Evanston, Illinois. The spill occurred at approximately 2:15 pm in a small section of the store referred to as the Dollar Spot—a brightly lit, white-tiled area composed of two short perpendicular aisles. More than 16 minutes later, Plaintiff fell on the spilled water. Within 30 seconds, the unknown woman who had spilled the water appeared with one of Defendant's employees, who immediately notified store management about the spill, blocked off the area,

cleaned the spill, and completed an incident report. While Defendant's employees are taught to be observant for spills and to clean them promptly upon notice, there are no specific times of the day where Defendant's employees are required to walk each area of the store to inspect for spills. The surveillance footage shows that approximately 22 or 23 individuals walked through the Dollar Spot aisle during the 16-minute interval between the spill and Plaintiff's fall. In addition, approximately 12 individuals wearing red shirts and khaki pants (the standard Target employee uniform) walked past, but not through, the Dollar Spot in those same 16 minutes. There is no evidence that any customer or presumed Target employee noticed the spill.

Plaintiff claims that Defendant was negligent under Illinois law in failing to keep its store safe. In particular, Plaintiff argues that Defendant breached its duty of care because it had actual and constructive notice of the spilled water. Defendant moved for summary judgment, which the Court granted [65]. First, the Court rejected Plaintiff's arguments that a reasonable jury could find that Defendant had actual notice of the spill because the spill was caught on the store's surveillance footage and it took 16 minutes for the unknown woman who caused spill to appear with a Target employee in the Dollar Spot. The Court reasoned that both arguments were not based on reasonable inferences supported by record evidence. Second, the Court rejected Plaintiff's arguments that Defendant had constructive notice based on length of time that the water remained on store's floor and the volume of store traffic. The Court concluded that there was not a triable issue of fact on this question for several reasons: the spill was colorless and odorless; there was no evidence that anyone walking near the spill looked down or altered their movements to avoid the spill; the spill occurred in an area of the store that was not a natural spot for a water hazard; there was no evidence that it was raining; there was testimony that the store was not "particularly crowded"; and Defendant's employees are not required to patrol individual

aisles. Accordingly, the Court granted the motion and entered judgment in Defendant's favor. [See 66.]

Following the entry of judgment, Plaintiff filed a motion for reconsideration [67], arguing that there are disputed issues of material fact that require resolution by trial. Defendant filed a bill of costs [70], seeking recovery of $5,835.53 for costs associated with litigating this matter.

## II. Legal Standard

"A motion to alter or amend a judgment is only proper when 'the movant presents newly discovered evidence that was not available at the time of trial or if the movant points to evidence in the record that clearly establishes a manifest error of law or fact.'" *Burritt v. Ditlefsen*, 807 F.3d 239, 252–53 (7th Cir. 2015) (quoting *Matter of Prince*, 85 F.3d 314, 324 (7th Cir. 1996)). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). A motion under Federal Rule of Civil Procedure Rule 59(e) should be used only when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir. 1990). Even so, "the opportunity to correct itself is a prerogative that the Court always enjoys" and is within the "absolute discretion of the district court" when presented with a Rule 59(e) motion. *Petty v. City of Chi.*, 2012 WL 1965416, at *2 (N.D. Ill. May 31, 2012).

## III. Analysis

In arguing that the Court should reconsider its decision to grant summary judgment for Defendant, Plaintiff does not present newly discovered evidence or claim that the Court

3

disregarded or failed to recognize controlling precedent. Nor does Plaintiff seek reconsideration of the Court's order granting summary judgment on Plaintiff's actual notice theory [see 65, at 7–13], which remains undisturbed by this opinion. Instead, Plaintiff's main argument is that the Court erred in evaluating certain evidence that she claims supports her constructive notice theory. The Court takes this opportunity to reconsider whether Plaintiff has presented sufficient evidence to show the existence of a genuine dispute of material fact on this issue.

Specifically, Plaintiff argues that a reasonable jury could find that Defendant had constructive notice because (1) the spill remained on Defendant's floor for over 16 minutes; (2) the area in which the water spilled was either four or six feet in diameter according to two of Defendant's contemporaneous incident reports [see 52-1, at 2; 37-1, at 78]; (3) Defendant knew that the Dollar Spot was a "high volume" area for "slips and injuries" [37-1, at Ex. C, 58:2–7]; (4) Defendant admitted that the "general area" around the Dollar Spot "was inspected by store personnel whenever their job duties and responsibilities brought them in or near" that area for "any condition which could pose a danger to employees or patrons" [52-1, at 35, Def.'s Resp. to Pl.'s Interrog. No. 25]; (5) as many as 12 of Defendant's employees walked by the Dollar Spot while the spill was on the floor; (6) more than 20 people walked through the Dollar Spot in between the spill and Plaintiff's fall; and (7) 48 people walked into the store during this same period. Said differently, viewing the facts in the light most favorable to Plaintiff, could a reasonable juror conclude that Defendant should have discovered a six-foot water puddle on the floor for over 16 minutes when potentially 12 of its employees, each required to inspect this specific area for hazards, walked by that section of the store and knew that it was a high volume area for slip and falls? On reconsideration, the Court agrees with Plaintiff that the answer to this question is—just barely—yes.

To be clear, the Court is dubious of Plaintiff's constructive notice theory. Contrary to Plaintiff's argument, this case is not like *Peterson v. Wal-Mart Stores, Inc.*, 241 F.3d 603 (7th Cir. 2001), which involved a broken can of shaving lotion on the floor for 10 minutes, testimony that Wal-Mart employees had walked down that very aisle just minutes before the plaintiff's accident, evidence of "heavy" customer traffic, and testimony that Wal-Mart employees "patrol the aisles constantly for signs of spills." *Id.* at 605. Here, the colorless and odorless water spill was likely invisible to Defendant's employees as they walked by the Dollar Spot. There is no evidence that Defendant's employees walked through the Dollar Spot in the relevant 16 minutes, that the customer traffic in the store at the time was "heavy," or that Defendant assumed an obligation to patrol all aisles for spills. Rather, evidence that roughly two people every three minutes walked through the Dollar Spot and roughly three people entered the store per minute strongly suggests that the store was *not* "crowded." Likewise, the fact that this spill stayed on the floor for more than 10 minutes does not, by itself, create a question of fact for the jury. See, *e.g.*, *Berg v. Target Corp.*, 2013 WL 6114790, at *5 (N.D. Ill. Nov. 18, 2013) (granting summary judgment because "ten or fifteen minutes was not enough time to give Defendant constructive notice of [spilled] grapes"). Illinois requires a case-by-case approach that examines both the length of time that the spill existed and the surrounding circumstances. *Reid v. Kohl's Dep't Stores, Inc.*, 545 F.3d 479, 483 (7th Cir. 2008). Simply put, *Peterson* neither mandates nor prohibits jury resolution of constructive notice issues where a spill remains on the floor longer than 10 minutes, and Plaintiff's heavy focus on this argument is misplaced.

Nevertheless, the Court agrees that it may have underestimated the potential significance of the conflicting evidence on the size of the spill. As Plaintiff notes, Defendant's Guest Incident Report indicates there was a "water spilled 6' area," [37-1, at 79], and Defendant's Investigation

Report describes the condition of the floor at the time of the incident as "approx 4' of spilled water" [52-1, at 2]. It certainly is possible that the author of both reports intended to use a single apostrophe to refer to inches and not feet, especially in light of other witness testimony that the spill was less than "four inches" [See 37, at Ex. C, 16:5–13] and the fact that it is difficult to see almost *any* water in the pictures included with the summary judgment record [see 37-1, at 147, 149, 151, 153]. However, at the summary judgment stage, the Court cannot resolve the size of the spill on the basis of the existing record. While Defendant may be proven correct that the spill was not a "single continuous puddle" and expanded only as a result of Plaintiff's fall [52, at 13], the Court cannot adopt this interpretation of the phrase "water spilled 6' area" when it must construe all facts and reasonable inferences in the light most favorable to Plaintiff. Accordingly, when considered with reasonable inferences regarding the number of Defendant's employees who presumably walked by the spill, Defendant's policies regarding inspection of the Dollar Spot, and the length of time that the spill remained on the floor, the puddle's disputed size raises questions of material fact that bear on whether Defendant should have discovered it prior to Plaintiff's fall.

Plaintiff's path forward is narrow. If the evidence shows that the size of "puddle" was more like four *inches*, then judgment as a matter of law for Defendant may be appropriate because there was no constructive notice. If the evidence shows that the size of "puddle" was more like four *feet*, then judgment as a matter of law for Defendant may be appropriate because the spill was an "open and obvious" condition.[1] For this reason, the Court is inclined to consider

---

[1] Plaintiff will need to thread this needle carefully. For example, Plaintiff does not meet her burden of proof by pointing to the poor quality surveillance video and speculating that other customers either may have slipped as well or noticed the spill and may have walked around it. [62, at 11]; *Berg v. Target Corp.*, 2013 WL 6114790, at *3 (N.D. Ill. Nov. 18, 2013) (holding that speculation was insufficient to establish constructive notice). If there is evidence that other customers actually noticed the spill and avoided it, Plaintiff will need to present evidence showing why the spill was not obvious to her. If there

6

submitting a special interrogatory to the jury on the size of the spill, which may prove case dispositive. See *E.E.O.C. v. Mgmt. Hosp. of Racine, Inc.*, 666 F.3d 422, 439 (7th Cir. 2012) ("Whether to submit special interrogatories (either on all issues or on a subset of issues like damages) is committed to the sound discretion of the district court." (citation and internal quotation marks omitted)); *Matter of CLDC Mgmt. Corp.*, 72 F.3d 1347, 1353 (7th Cir. 1996) ("A trial court has wide discretion in submitting special verdicts to the jury in order to facilitate its comprehension of the issues.").

In addition, if the evidence at trial shows that the store was not crowded based on the store's size and typical customer traffic;[2] that Defendant's vague interrogatory answer means something short of a policy directing that employees inspect the Dollar Spot for hazards whenever they walk by that area;[3] and the Dollar Spot was not more likely than other store areas to be a source of slips and falls, then the Court will entertain a motion for judgment as a matter of law on these bases as well. Moreover, if Plaintiff seeks to avail herself of the "distraction" exception to the "open and obvious" doctrine, she will need to present evidence—not speculation

---

is no evidence that customers walking through the Dollar Spot noticed the spill, Plaintiff will need to present evidence establishing that Defendant's employees would have and should have noticed the spill had they walked through the aisle.

[2] For example, although *Peterson* emphasizes that the duty to patrol carefully "is a function of the number of customers per square foot of floor," the record before the Court is silent on this ratio at the time of Plaintiff's fall. 241 F.3d at 604–05. Similarly, there is no clear evidence in the record as to whether 48 people entering the store in 16 minutes shows the store is more or less busy than usual or how this compared to other store traffic volumes. See, *e.g.*, *Pita v. Target Corp.*, 2009 WL 1507645, at *4–5 (N.D. Ill. May 29, 2009) ("*Reid* dictates that Target's duty of care decreased in relation to customer traffic"); *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 652 (7th Cir. 2014) ("Because the record reflects that the store was not particularly busy, the duty to scrutinize the aisles consequently decreased.").

[3] The relevant portion of the interrogatory answer states, "[T]he general area where the occurrence occurred was inspected by store personnel whenever their job duties and responsibilities brought them in or near the area of the occurrence. Store employees are trained and instructed to be observant of any merchandise which is out of place or on the floor or any condition which could pose a danger to employees or patrons and to address those conditions when discovered." [52-1, at 35.] The Court is not suggesting that this policy created a legal duty for Defendant, but reiterates that it may be relevant to determining whether employees were "careless not to have noticed the" spill. *Peterson*, 241 F.3d at 605.

[see, *e.g.*, 62, at 2–3]—supporting application of that exception. In short, while the obstacles to Plaintiff's recovery are numerous, the Court agrees that these issues and this record present questions of material fact that cannot be resolved on summary judgment.

Finally, to the extent that Plaintiff asserts that Defendant's alleged failure to obtain certain witnesses contact information entitles her to an inference that this "missing witness information" would have shown Defendant's liability [67, at 2, 12], Plaintiff falls well short of justifying that request. Plaintiff cannot avoid summary judgment or satisfy her burden of proof through belated and underdeveloped negligent spoliation arguments. To prevail at trial, Plaintiff will need to present actual evidence that will support Defendant's liability on a constructive notice theory.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for reconsideration [67] is granted in part. The entry of judgment in a civil case [66] is vacated, and the Court's March 23, 2016 Memorandum Opinion and Order [65] is amended to the extent necessary to reflect the rulings contained in this opinion. As a result of the Court's ruling, Defendant's bill of costs [70] is denied without prejudice as premature. This case is set for further status on November 9, 2016 at 9:00 a.m. to set a schedule for pre-trial filings and to discuss the possibility of settlement.

Dated: October 7, 2016

_____
Robert M. Dow, Jr.
United States District Judge